OPINION OF THE COURT
Jasen, J.
We are asked to decide on this appeal whether the plaintiff established a prima facie case of strict products liability for an allegedly defectively designed product.
Plaintiff was using a circular power saw manufactured by the defendant to cut 2 by 4 boards for the purposes of remodeling the roof on his mobile home. Working at sawhorses which he had set up in his driveway, he would cut each board in half and then, using a template, cut one end of each board at a 45-degree angle.
The housing of the saw covers all but the lower portion of the circular blade. Part of that lower portion of the blade is covered by a guard which is designed to move back as the blade makes contact with the wood. This guard has a spring mechanism so that as soon as the pressure from the contact with the wood stops, the guard automatically closes to its original position. The purpose of the guard is, of course, to protect the operator, but plaintiff’s expert testified that in order for the saw to operate properly part of the blade should be exposed even when the guard is in the closed position to allow the initial contact between the blade and the wood.
Plaintiff testified that he was holding the saw in his right hand and bracing the 2 by 4 against the sawhorse with his left hand. As he made a cut across one of the boards, the saw hit a knot, projecting the saw upward approximately 18 inches into the air. Sufficient time elapsed for the guard to close before the saw came down in such a manner that the exposed and unguarded part of the rotating saw blade struck plaintiff’s hand, severely lacerating it and severing part of his thumb which, upon contact, became wedged between the blade and the guard. Plaintiff testified that he believed the blade stopped rotating when it hit the bone in his thumb. There is no dispute *105 that the guard was operating properly and had closed as far as it could before the blade came in contact with the plaintiff’s hand.
Testimony of an expert witness who had conducted a series of tests on plaintiff’s saw also was presented. He testified that the kinetic energy produced by the rotating saw hitting the knot would be sufficient to force the saw into the air as plaintiff described. The tests conducted by the expert also indicated that sufficient time would have elapsed to allow the movable guard to close to its maximum point and that the guard on plaintiff’s saw was operating as the manufacturer intended. Defendant did not question plaintiff’s testimony that the guard had closed to its maximum point before contacting plaintiff’s hand.
Plaintiff alleged in his cause of action sounding in strict products liability that defendant’s saw was defectively designed because the saw blade guard allowed an excessive amount of the blade to be exposed. In support of this position, plaintiff questioned his expert witness concerning industry standards and good engineering principles as applicable to the design of circular power saws. It was the opinion of that expert that it would have been a simple matter to design the saw so that it would be safer by extending the movable guard and that to do so would have brought the saw into conformity with both minimum safety standards and good design standards.
The minimum safety standard testified to was that developed and published by the Underwriters Laboratory, Inc. The saw bore the familiar UL logo indicating its conformity with those standards. Plaintiff’s expert, however, demonstrated that the saw with the guard closed to its maximum point allowed 53 degrees of the blade to be exposed. The maximum exposure of blade under the underwriters standards was set at 45 degrees. Although he could not state with certainty that the plaintiff would not have been injured had the exposure been reduced to 45 degrees, he did testify that the guard “should extend much farther [than it does] in order to meet good design standard”.
At the close of the plaintiff’s case, the Trial Judge dismissed the causes of action alleging breach of warranty and strict products liability. The case proceeded on the *106 remaining cause of action sounding in negligence. The jury returned a verdict of no cause on the negligence cause of action, and plaintiff has not disputed that verdict.
On appeal, the plaintiff has also abandoned his claim under the warranty cause of action, but urges that it was error to refuse to submit the case to the jury on the strict products liability cause of action. The evidence presented, he argues, was sufficient to establish a prima facie case of liability based on the defectively designed product. The Appellate Division affirmed the dismissal of the cause of action sounding in strict products liability, without opinion. Because our review of the record indicates that plaintiff did establish a prima facie case of strict products liability for a defectively designed product, we now modify the order of the Appellate Division and remit to the trial court for a new trial on the cause of action sounding in strict products liability.
In New York, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability. “Depending on the factual context in which the claim arises, the injured plaintiff, and those asserting derivative claims, may state a cause of action in contract, express or implied, on the ground of negligence, or, as here, on the theory of strict products liability.” (Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 400.)
In recognizing a cause of action for strict products liability, we stated that “the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used * * * for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would hot by the exercise of reasonable care have h th discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.” (Codling v Paglia, 32 NY2d 330, 342.) As the law of strict products liability has developed in New York, a plaintiff may assert that the product is defective because of a *107 mistake in the manufacturing process (Victorson v Bock Laundry Mach. Co., supra) or because of an improper design (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376) or because the manufacturer failed to provide adequate warnings regarding the use of the product (Torrogrossa v Towmotor Co., 44 NY2d 709). (Robinson v Reed-Prentice Div. of Package Mach. Co., 49 NY2d 471, 478-479.)
In this case, plaintiff does not allege that there was any defect in the manner in which the product was manufactured or the warnings provided by the manufacturer. Our inquiry will accordingly be limited to whether plaintiff established a prima facie case of a defectively designed product.
We have held that a “defectively designed product is one which, at the time it leaves the seller’s hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce”. (Robinson v Reed-Prentice Div. of Package Mach. Co., supra, at p 479.) Strict products liability for design defect thus differs from a cause of action for a negligently designed product in that the plaintiff is not required to prove that the manufacturer acted unreasonably in designing the product. The focus shifts from the conduct of the manufacturer to whether the product, as designed, was not reasonably safe. (See Note, 42 Ford L Rev 943.) A manufacturer is held liable regardless of his lack of actual knowledge of the condition of the product because he is in the superior position to discover any design defects and alter the design before making the product available to the public. Liability attaches when the product, as designed, presents an unreasonable risk of harm to the user.
In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff’s injury.
*108 Much has been written as to what must be shown to establish that the product was defective, including discussions as to the proper distinctions between “reasonably safe”, “not reasonably safe” and “unreasonably dangerous”. (Epstein, Modern Products Liability Law, at pp 76-92; Swartz, The Concepts of “Defective Condition” and “Unreasonably Dangerous” in Products Liability Law, 66 Marquette L Rev 280; Keeton, Product Liability and the Meaning of Defect, 5 St Mary’s LJ 30, 35-39; Note 42 Ford L Rev 943.) As a result, courts have interchangeably used these terms in instructing jurors concerning the applicable standard for determining whether a product was defectively designed. We believe that a variety of terms with various subtle distinctions in their definitions may tend only to create confusion in ascertaining the proper standard to determine whether or not a given product is defectively designed. Therefore, we conclude that the proper standard to be applied should be whether the product as designed was “not reasonably safe” — that is, whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner. (See 1 NY PJI2d 138-139 [1982 Supp].)
It will be for the jury to decide whether a product was not reasonably safe in light of all the evidence presented by both the plaintiff and defendant. (Rainbow v Elia Bldg. Co., 79 AD2d 287, 291, affd 56 NY2d 550; Robinson v Reed-Prentice Div. of Package Mach. Co., supra, at p 479; Micallef v Miehle Co., Div. of Miehle-Goss Dexter, supra, at p 386.) The plaintiff, of course, is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer" manner. The defendant manufacturer, on the other hand, may present evidence in opposition seeking to show that the product is a safe product — that is, one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product’s inherent usefulness at an acceptable cost. (Rainbow v Elia Bldg. Co., 79 AD2d 287, *109 affd 56 NY2d 550, supra; Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376, 386, supra.) The question for the jury, then, is whether after weighing the evidence and balancing the product’s risks against its utility and cost, it can be concluded that the product as designed is not reasonably safe. (Epstein, Modern Products Liability Law, at pp 76-92; Vandall, “Design Defect” in Products Liability: Rethinking Negligence and Strict Liability, 43 Ohio St LJ 61, 85-86.)
In balancing the risks inherent in the product, as designed, against its utility and cost, the jury may consider several factors. (Epstein, Modern Products Liability Law, op. cit.; Kimble & Lesher, Products Liability, § 55, p 81.) Those factors may include the following: (1) the utility of the product to the public as a whole and to the individual user; (2) the nature of the product — that is, the likelihood that it will cause injury; (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to have avoided injury by careful use of the product; (6) the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff; and (7) the manufacturer’s ability to spread any cost related to improving the safety of the design. (Rainbow v Elia Bldg. Co., 79 AD2d 287, 291, affd 56 NY2d 550, supra; see, also, Wade, On the Nature of Strict Tort Liability for Products, 44 Miss LJ 825, 837-838; 1 NY PJI2d 139-140 [1982 Supp].)
Pertinent factors in the individual case, when evaluated as to whether or not they are applicable, should form the. basis for charging the jury as to how it should evaluate the evidence in order to decide whether a product is not reasonably safe.
Additionally, to establish a prima facie case, the plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury. (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, supra, at pp 386-387; 1 Weinberger, New York Products Liability, § 21:06.) By proximate cause in the context of strict products liability for design defects, we mean that after weighing the various factors and conclud *110 ing that the design was defective the jury has decided that the defect was a substantial factor in causing plaintiff’s injury. (Rainbow v Elia Bldg. Co., supra, at p 289; 1 Weinberger, New York Products Liability, op. cit.)
Proximate cause in a products liability case serves a somewhat different role than in a case sounding in negligence because that cause of action seeks to impute liability to the manufacturer not on the basis of his negligence but because the product is not reasonably safe as it was designed. The tie which proximate cause is to provide in order to impose legal liability must be between the design defect of the product and the injury — that is, the plaintiff must show that the design defect in the product was a substantial factor in causing his injury.
Turning to the case before us, we believe that plaintiff presented sufficient evidence to justify submitting the defective design issue to the jury. While products such as those involved in this case can be said to be inherently dangerous, it would be for the jury, applying the aforesaid principles, to decide whether the saw as designed and marketed was not reasonably safe. In deciding this, they would consider plaintiff’s proof that the exposed portion of the saw was so large that it did not meet minimum safety standards. Additionally, plaintiff’s expert’s opinion that a safer saw could easily be built at a reasonable cost merely by extending the movable guard should be considered.
Were the jury to decide after considering any evidence offered by defendant* that the product was defective, it would be proper for the jury to decide whether the defective design was a substantial factor causing plaintiff’s injury. On the basis of the record before this court, the jury could so conclude based on plaintiff’s testimony that his injuries occurred when the unguarded portion of the blade came down on his hand and that the severed portion of his thumb became lodged between the blade and the guard, the very design of which plaintiff alleges was defective. Expert testimony with reference to proximate causation is not always required; in this case the jury could have found *111 proximate causation from its consideration of the characteristics of the circular saw and plaintiff’s description of how the accident happened. Having presented evidence from which the jury could have found that the saw was designed in a manner which made it not reasonably safe and that this design defect was a substantial factor in causing his injuries, the cause of action in strict products liability for design defect should have been submitted to the jury.
Plaintiff also alleged that it was error not to allow the other complaints filed against the manufacturer to be submitted into evidence to establish that the manufacturer was on notice that its product was not reasonably safe. There was no error as plaintiff failed to provide any proof that the documents were genuine or had been served on the defendant. We would further note that as to the cause of action in strict products liability, there was no error as the manufacturer’s knowledge, actual or constructive, is not in issue; rather, the design of the product in light of the state of the art at the time of production is the issue.
Accordingly, the order of the Appellate Division should be modified, with costs to abide the event, and the case remitted to Supreme Court for a new trial on the strict products cause of action, and, as so modified, the order should be affirmed.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchsberg and Meyer concur; Judge Simons taking no part.
Order modified, with costs to abide the event, and case remitted to Supreme Court, Oswego County, for a new trial in accordance with the opinion herein and, as so modified, affirmed.

 At retrial, defendant will have the opportunity to offer proof on various defense matters such as the reasonable safety of the saw or plaintiff’s misuse which might raise questions of comparative fault. On this record, we can only speculate as to potential defenses since the dismissal in the prior trial was at the close of plaintiff’s case.