EDWARD PERAZONE et al., Respondents, v SEARS, ROEBUCK AND COMPANY et al., Appellants, and HUBBELL BROTHERS, INC., Respondent. (And a Third-Party Action.)

Third Department, May 14, 1987

## APPEARANCES OF COUNSEL

*Van De Water & Van De Water (David D. Hagstrom* of counsel), for appellants.

*Kellar & Kellar (Paul T. Kellar* of counsel), for Edward Perazone and another, respondents.

*Appelbaum, Eisbenberg, Bauman & Appelbaum (Harold J. Bauman* of counsel), for Hubbell Brothers, Inc., respondent.

*William M. Weegar (Kathleen C. Sassani* of counsel), for Nelson Muffler, Inc., respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

In 1973, plaintiff Edward Perazone (hereinafter plaintiff) purchased a garden tractor designed and manufactured by defendant Roper Corporation and marketed by defendant Sears, Roebuck and Company. In October 1978, plaintiff employed defendant Hubbell Brothers, Inc. to service the tractor. At that time, Hubbell replaced the original gasoline tank cap with a standard replacement cap. On July 21, 1979, while operating the tractor, plaintiff became aware of a hissing sound coming from the top of the cap. Soon afterward, the cap blew off the tank causing gasoline to spill out and ignite. Plaintiff suffered second- and third-degree burns over approximately 40% of his body.

Plaintiff and his wife commenced this action against Sears, Roper and Hubbell alleging causes of action sounding in negligence, strict products liability and breach of warranty. Sears answered and interposed a cross claim against Hubbell. Roper answered and made no cross claims. Hubbell answered and interposed a cross claim against Sears. Sears and Roper then impleaded a third party whose liability is not in issue on this appeal. The breach of warranty causes of action were dismissed on Statute of Limitations grounds, and plaintiff has not appealed such dismissal. The action went to trial, but before submission to the jury, Supreme Court dismissed the strict products liability cause of action against Hubbell and the third-party action. Plaintiff does not challenge either dismissal. The jury found for plaintiff as against Sears and Roper on the negligence causes of action, but rejected the strict products liability causes of action, expressly finding that the tractor was not defective. The jury further found that neither Hubbell nor plaintiff were to any degree negligent. Damages were found to be $625,000 for plaintiff and $100,000 for his wife. This appeal by Sears and Roper (hereinafter defendants) ensued.

Defendants' primary contention is that Supreme Court erred in allowing plaintiff to submit evidence of postmanufacture design changes. Specifically, they challenge the introduction of the owner's manual for a later model tractor produced by defendants, certain "change notices" concerning engineering changes on the tractor and the reading into evidence of Roper's answer to an interrogatory concerning post-1973 design changes.

It has long been a principle of the law of evidence that proof of postaccident repairs or modifications by a defendant is not admissible as evidence of negligence (see, Richardson, Evidence §§ 168, 221, at 136, 197 [Prince 10th ed]; Fisch, New York Evidence § 798, at 468 [2d ed]). The rule is based in logic as well as public policy. Evidence of subsequent remedial measures does not logically prove negligence and is highly prejudicial to a defendant. Also, parties should not be discouraged from making repairs and lessening the chance of injury to others.

This principle has come up for review in connection with its applicability to the developing area of strict products liability. A strict products liability cause of action may be premised on a defect in the manufacturing process, a defect in the design

or a failure by the manufacturer to provide adequate warning or instructions *(Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 106-107). The prevailing view, and that espoused in the Federal Rules of Evidence and the proposed Code of Evidence for the State of New York, is that evidence of postmanufacture design change is not admissible in a strict products liability action (Fed Rules Evid rule 407; Proposed NY Code of Evidence § 407; *see,* Richardson, Evidence § 168, at 67-69, 1972-1985 Supp [Prince 10th ed]). However, the Court of Appeals has held that, while evidence of postmanufacture design change is not admissible in a strict products liability action alleging a defect in design or failure to adequately warn or instruct, such evidence is admissible in a strict products liability action alleging a defect in manufacture *(Rainbow v Elia Bldg. Co.,* 56 NY2d 550, *affg on opn below* 79 AD2d 287; *Caprara v Chrysler Corp.,* 52 NY2d 114, 124-126; *see, Haran v Union Carbide Corp.,* 68 NY2d 710, 711-712; *Cover v Cohen,* 61 NY2d 261, 270-271).*

Since evidence of postmanufacture design change is extremely prejudicial to a defendant, the action must be scrutinized to ascertain which theory or theories of strict products liability the plaintiff is relying on. Where a plaintiff attempts to prove a manufacturing defect and also offers proof of design defect and/or failure to warn or instruct, evidence of postmanufacture design change would be admissible on the issue of manufacturing defect and the defendant could request a jury charge limiting the consideration of such evidence to that issue *(see, Brandon v Caterpillar Tractor Corp.,* 125 AD2d 625; Richardson, Evidence § 168, at 137 [Prince 10th ed]). However, a plaintiff cannot be permitted to make a perfunctory allegation of manufacturing defect, in a case where he is proceeding primarily on theories of negligence or strict products liability based on design defect or failure to adequately warn, and thereby circumvent the general rule that evidence of postmanufacture design changes is not admissible in these latter causes of action.

■ In the instant case, plaintiff claims that he was proceed-

---

* Such evidence is also admissible where a manufacturer disputes a plaintiff's proof of the feasibility of a design alternative or to establish the manufacturer's failure to warn of a known risk or defect *(Haran v Union Carbide Corp.,* 68 NY2d 710; *Cover v Cohen,* 61 NY2d 261), or in any situation where the evidence is offered not as proof of negligence or defective design but as proof of some other relevant fact, such as control *(see,* Richardson, Evidence § 168, at 137 [Prince 10th ed]).

ing on the manufacturing defect theory of strict products liability as well as the design defect theory. "Where a product presents an unreasonable risk of harm, notwithstanding that it was meticulously made according to detailed plans and specifications, it is said to be defectively designed" *(Robinson v Reed-Prentice Div.,* 49 NY2d 471, 479). To be contrasted with design defect is manufacturing defect. A defectively manufactured product "is flawed because it is misconstructed without regard to whether the intended design of the manufacturer was safe or not. Such defects result from some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction" *(Caprara v Chrysler Corp., supra,* at 128-129 [dissenting opn]; *see, Opera v Hyva, Inc.,* 86 AD2d 373, 377; *Rainbow v Elia Bldg. Co.,* 79 AD2d 287, 294, *affd on opn below* 56 NY2d 550). The gist of plaintiff's case was that the tractor was designed defectively by defendants in that the battery, muffler and gasoline tank were improperly placed in close proximity to each other in the engine compartment without any separating shielding. Experts testified for plaintiff that because of such placement the tractor was not reasonably safe and that several other manufacturers built similar tractors in a different manner which avoided the hazard created by defendants' design. While plaintiff's complaints alleged that there was a manufacturing defect, he offered no proof that, regardless of the safety of the design of the tractor, there was any impropriety in the manufacture of this particular tractor. Thus, plaintiff's case, in essence, proceeded on negligence and strict products liability based on design defect. Evidence of postmanufacture design change was inadmissible on these causes of action. Further, we note that defendants conceded the feasibility of design alternatives. The error was prejudicial and warrants a new trial. Since we cannot be certain what effect such evidence had on the jury, its verdict on both causes of action must be set aside.

Next, defendants contend that Supreme Court erred in dismissing the strict products liability cause of action against Hubbell. This cause of action was premised on the sale by Hubbell to plaintiff of the replacement gasoline tank cap. Initially, we note that the judgment appealed from contains only one decretal paragraph which adjudicates defendants' liability to plaintiff but does not speak to the dismissal of the causes of action as against Hubbell. However, since such dismissal is referred to in the recitals in the judgment and

since all of the parties address such issue, including plaintiff who concurs in the dismissal of the cause of action, we will treat the judgment as disposing of the entire action.

While a retailer may be held strictly liable for its sale of a defective product which it did not manufacture *(Sukljian v Ross & Son Co.,* 69 NY2d 89, 95; *Mead v Warner Pruyn Div.,* 57 AD2d 340), such liability will not be imposed on the occasional seller whose distribution of a product is incidental to its regular business *(Sukljian v Ross & Son Co., supra; Gobhai v KLM Royal Dutch Airlines,* 85 AD2d 566, 567, *affd on opn below* 57 NY2d 839). Hubbell claims that it was in the business of repairing machinery and that its transaction with plaintiff was in the nature of "service" rather than "sale". This argument confuses the difference between a breach of warranty cause of action and a strict products liability cause of action. The "sales/service" distinction relied on by Hubbell was developed in connection with breach of warranty since UCC article 2 deals with a sale of goods *(see, Milau Assocs. v North Ave. Dev. Corp.,* 42 NY2d 482, 485; *County of Chenango Indus. Dev. Agency v Lockwood Greene Engrs.,* 114 AD2d 728, 729, *appeal dismissed* 67 NY2d 757). Where one sells goods within the meaning of UCC article 2, certain warranties are made to the buyer. The focus of a breach of warranty cause of action, thus, is on the transaction between the seller and the particular buyer involved. If service dominated the transaction and the transfer of personal property was merely incidental, a "sale" did not take place and no UCC article 2 warranties were made.

A strict products liability cause of action, on the other hand, had been extended to retailers for policy reasons. "Where products are sold in the normal course of business, sellers, by reason of their continuing relationships with manufacturers, are most often in a position to exert pressure for the improved safety of products and can recover increased costs within their commercial dealings, or through contribution or indemnification in litigation; additionally, by marketing the products as a regular part of their business such sellers may be said to have assumed a special responsibility to the public, which has come to expect them to stand behind their goods" *(Sukljian v Ross & Son Co., supra,* at 95). The same policy considerations do not attend where the sale is by a party who is not engaged in the sale of the product in issue as a regular part of its business. Thus, while the focus of a breach of warranty cause of action is on the transaction between the seller and the particular

buyer, a strict products liability action against a seller focuses on the nature of the seller's business and its relationship with the manufacturer.

In the instant case, the transaction between Hubbell and plaintiff may well have been primarily service oriented, thus negating a breach of warranty action. However, the cause of action brought to trial by plaintiff was strict products liability and it is clear from the record that Hubbell was in the business of retail sale of hardware, lumber and lawnmowers as well as lawnmower parts. A consumer could have purchased the gasoline tank cap involved herein without having repairs on a lawnmower performed. This case is unlike *Gobhai (supra)*, where the provision of slippers to passengers was not a regular part of the business of an airline, or *Sukljian (supra)*, where the occasional sale of a surplus secondhand machine was not a regular part of the business of General Electric Company.

In our view, the record demonstrates that the sale of the gasoline tank cap was part of the regular course of Hubbell's business, such that it could be held liable for a defect in the cap. However, it is clear that insufficient proof of a defect in the cap was offered to warrant submission of the cause of action to the jury. The only semblance of such proof was the testimony of defendants' expert witness that the cap was not sealing as well as it should have. However, this testimony had no factual support and was part of the witness's highly speculative recital of his theory of how the accident occurred. Such testimony was directly contradicted by other evidence in the record.

Defendants also contend that Supreme Court erred in a number of respects in its charge to the jury. To the extent that such allegations of error affect the jury's finding of no negligence on the part of Hubbell, we have reviewed them and find them to be without merit. So much of the judgment as dismissed the complaint and cross claim against Hubbell is affirmed.

Since we have held that a new trial is warranted, it is unnecessary to address defendants' remaining contentions. The matter is remitted to Supreme Court for a new trial on plaintiff's causes of action against defendants alleging negligence and strict products liability based on design defect, as well as his wife's derivative causes of actions.

KANE, MAIN, CASEY and LEVINE, JJ., concur.

Judgment reversed, on the law, without costs, complaint and cross claim against defendant Hubbell Brothers, Inc. dismissed, third-party complaint against third-party defendant Nelson Muffler, Inc. dismissed, third cause of action in the complaint against defendant Roper Corporation and third cause of action in the complaint against defendant Sears, Roebuck and Company dismissed, and matter remitted to Supreme Court for a new trial on the remaining causes of action in the complaints against defendant Roper Corporation and defendant Sears, Roebuck and Company to the extent that they state causes of action for negligence and strict products liability based on design defect along with the derivative causes of action stated in the complaints.