■ BRIAN FITZPATRICK, Appellant, v BRIA K. CURRIE et al., Defendants, and SUBARU OF AMERICA SERVICES, INC., Respondent. [861 NYS2d 431]—

Spain, J.P. Appeal from an order of the Supreme Court (Dowd, J.), entered October 3, 2007 in Otsego County, which granted a motion by defendant Subaru of America Services, Inc. for summary judgment dismissing the complaint against it.

In January 2004, plaintiff was riding as a passenger in the front seat of a vehicle manufactured by defendant Subaru of America Services, Inc. when it became involved in a collision with another vehicle driven by defendant Bria K. Currie, resulting in the deployment of plaintiff's passenger-side air bag. Plaintiff, who was wearing a seat belt at the time, suffered injuries primarily to his face and right eye when the vehicle's air bag deployed. Plaintiff's father took photographs of the deployed air bag after the accident while the vehicle was stored at the towing company's yard. Those photographs are part of the record. The father also testified at a deposition that he observed a vertical slit or tear in the underside of the air bag, but that he did not take any pictures of the slit/tear because it was too difficult to photograph the underside of the deployed air bag without additional help and he was alone. There is no evidence to show whether the alleged slit occurred before, during or after deployment of the air bag. Notably, after the photographs were taken, the vehicle and the air bag were destroyed before the instant action was commenced.

Plaintiff commenced this action, asserting—among other things—claims against Subaru sounding in strict products liability, negligence and breach of warranty. Specifically, plaintiff

asserts that the air bag was defective because it deployed with excessive force striking him in the face and/or improperly split open releasing gas causing trauma and chemical burns to his face and eyes. After a substantial amount of discovery, Subaru moved for summary judgment dismissing the complaint against it, which Supreme Court granted. Plaintiff now appeals, and we affirm.

"A party injured as a result of a defective product may seek relief against the product manufacturer . . . if the defect was a substantial factor in causing the injury" (*Speller v Sears, Roebuck & Co.*, 100 NY2d 38, 41 [2003]: *see Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 110 [1983]). "A strict products liability cause of action may be premised on a defect in the manufacturing process, a defect in the design or a failure by the manufacturer to provide adequate warning or instructions"[1] (*Perazone v Sears, Roebuck & Co.*, 128 AD2d 15, 17-18 [1987], citing *Voss v Black & Decker Mfg. Co.*, 59 NY2d at 102, 106-107).

A manufacturing defect in a product is one which results from a mistake or error made during the manufacturing process (*see Caprara v Chrysler Corp.*, 52 NY2d 114, 128-129 [1981]). To establish a claim based on a manufacturing defect, plaintiff must prove that the product did not perform as intended and that it was defective at the time it left the hands of the manufacturer (*see Wesp v Carl Zeiss, Inc.*, 11 AD3d 965, 968 [2004]; *see also Rosado v Proctor & Schwartz*, 66 NY2d 21, 25-26 [1985]). In contrast, "[w]here a product presents an unreasonable risk of harm, notwithstanding that it was meticulously made according to detailed plans and specifications, it is said to be defectively designed" (*Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 479 [1980]). In order to establish a claim based on a design defect, plaintiff must show that the product was designed in such a way "that it was not reasonably safe" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d at 107); i.e., "whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner" (*id.* at 108). "This standard demands an inquiry into such factors as (1) the product's utility to the public as a whole, (2) its utility to the individual user, (3) the likelihood that the prod-

---

1. Although Subaru's failure to adequately warn is alleged in the amended complaint, plaintiff has abandoned that premise by failing to pursue it on appeal (*see Team Mktg. USA Corp. v Power Pact, LLC*, 41 AD3d 939, 943 n 2 [2007]).

uct will cause injury, (4) the availability of a safer design, (5) the possibility of designing and manufacturing the product so that it is safer but remains functional and reasonably priced, (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user, and (7) the manufacturer's ability to spread the cost of any safety-related design changes" (*Denny v Ford Motor Co.*, 87 NY2d 248, 257 [1995] [citation omitted]).

In its motion for summary judgment, Subaru made a prima facie showing that the air bag was free of any manufacturing or design defects. Subaru's expert, a mechanical engineer with extensive experience in the research of automobile crashes including the biomechanics of impact trauma and the evaluation of air bag systems, opined that the evidence supports his conclusion that not only did the air bag properly deploy as it was intended, but that his conclusion is confirmed by the fact that plaintiff did not suffer the kind of injuries he would have suffered if his head and/or upper body had struck the solid structure of the car, and that facial and eye injuries are consistent with a properly deploying air bag. Also, the expert explained, in response to plaintiff's assertion that the device was unreasonably powerful, Subaru had no choice but to make the air bag inflation system very quick and forceful in deploying because the applicable government regulations at the time—and for good reason—essentially mandated such a design. The expert further opined that in all of his experience, he had never seen nor heard of any report of a predeployment air bag with a " 'tear' or 'split' " as described by plaintiff's father, nor had he ever seen or heard a report of an air bag tearing during deployment, concluding that such a tear was "highly unlikely." He further concluded that even if there were such a tear, it would have had "no effect on the deployment of the air bag . . . and did not cause or contribute to plaintiff's injuries." Finally, while the expert may have misread plaintiff's deposition testimony to conclude that plaintiff admitted he was leaning forward at the time of impact, said misunderstanding does not undermine his overall conclusion that the air bag's utility clearly outweighed the risks involved.

In response, plaintiff failed to meet his burden of demonstrating by admissible evidence the existence of a factual issue by laying bare his proof establishing that his injuries were caused by any defect in the air bag. Notably, plaintiff's response did not include the opinion of any expert on the design and functioning

of an air bag.[2] While the opinion of an expert may not always be necessary in establishing a products liability case, the complex issues involved in the design and operation of an air bag make expert proof imperative, especially, where—as here—Subaru's motion is supported by the opinion of an expert (*compare Preston v Peter Luger Enters., Inc.*, 51 AD3d 1322, 1324 [2008], with *Steuhl v Home Therapy Equip., Inc.*, 51 AD3d 1101, 1104-1105 [2008]; *see also Tkach v Golub Corp.*, 265 AD2d 632, 633 [1999]).

Plaintiff's deficient response to Subaru's motion also relies heavily on 70 pages of customer complaints which had been provided to plaintiff under protest by Subaru during the course of discovery, many of which report facial abrasions and contusions as the result of the deployment of an air bag. Plaintiff submits no proof that any of the complaints has any basis or that any determination was made that the air bag system involved in each complaint was defective, and Supreme Court properly rejected their evidentiary value.

We conclude, on the record before us, that no legitimate question of fact has been raised by plaintiff regarding the existence of a defect in the air bag. Accordingly, Supreme Court properly granted Subaru's motion for summary judgment.

Lahtinen, Kane, Malone Jr. and Stein, JJ., concur. Ordered that the order is affirmed, with costs.

**2.** Plaintiff's answer to Subaru's interrogatories reveals that an expert did inspect the vehicle on behalf of plaintiff after the accident.