(2008)
Jacqueline GUARASCIO and Christine Wile, as Legal Representatives and Guardians of the Person of Anthony Guarascio, Plaintiffs,
v.
DRAKE ASSOCIATES INC., The Underwater Authority, a Corporation; EIC Associates Inc., and South Jersey Port Corporation, Defendants.
v.
Global Marine Construction Supply, Inc., Third-Party Defendant.
No. 06 Civ. 15185 (CM).
United States District Court, S.D. New York.
September 15, 2008.

DECISION AND ORDER GRANTING GLOBAL MARINE'S MOTION FOR SUMMARY JUDGMENT
McMAHON, District Judge:
This litigation arises out of a diving accident that occurred on February 24, 2006 ("the accident"), in which plaintiffs' ward Anthony Guarascio ("Mr. Guarascio") sustained permanent severe brain damage after his air supply was cut off. Pursuant to Federal Rule of Civil Procedure 14(c), Defendant Drake Associates, Inc., The Underwater Authority ("Drake"), Mr. Guarascio's employer at the time of the accident, tendered third-party defendant Global Marine Construction Supply Inc. ("Global Marine"), the alleged manufacturer and seller of the oxygen manifold device that Drake was using on the day of the accident, to Plaintiffs, asserting claims for products liability and contribution and indemnity. Global Marine now moves for summary judgment. For the following reasons, Global Marine's motion is granted and the Third Party Complaint is dismissed with prejudice.

BACKGROUND
Drake alleges that, in or about 1995, it purchased from third-party defendant Global Marine an oxygen manifold device (the "product") for use by Drake in connection with its commercial diving operations. The product consisted principally of a rectangular metal frame, valves, filters, gauges and couplings, to which were attached, or could be attached, lines from oxygen tanks and/or oxygen bottles. The design and manufacture of the product was such that oxygen to be conveyed to the diver passed through lines from oxygen tanks, or from oxygen bottles, to the oxygen manifold device and, by operation of a quarter-turn valve mechanism on the product, though air lines connected to the diver's diving apparatus or other equipment.
It is undisputed that, after purchasing the product, Drake modified the orientation of the air supply lines to which the diver's umbilical chord attached by way of a quarter-turn ball valve, such that the ball valves extended forward and outside the aluminum frame which housed the manifold's components.
Plaintiffs allege that Mr. Guarascio was injured when this quarter-turn valve was shut off to his air tanks, causing him to be without oxygen for a significant period of time. (A fuller description of the accident is found in the Court's other opinions on the motions for summary judgment). The quarter-turn valve was contained within, and incorporated into, the oxygen manifold device. The oxygen manifold device, as manufactured and sold by Global Marine, did not include any means of locking the quarter-turn valve in order to prevent any unintentional or accidental closure of the valve while oxygen was required incident to diving operations. The product did not contain any warning of this condition.
The issues are: (1) whether the product was unreasonably dangerous to normal use and/or was in a defective condition when it left Global Marine's control; and/or (2) whether Global Marine negligently failed to warn of a danger and/or hazard caused by the design of the product.

DISCUSSION

1. Standard of Review
Under Federal Rule of Civil Procedure 56(c), the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movants are entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Furthermore, where a plaintiff cannot establish an essential element of his claim, "there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-33, 106 S.Ct. 2548. On a motion for summary judgment, the court views the record in the light most favorable to the non-movants and resolves all ambiguities and draws all reasonable inferences against the movants. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Donahue v. Windsor Locks Bd. of Fire Commn'rs, 834 F.2d 54, 57 (2d Cir.1987).

2. Analysis
Drake and Plaintiffs assert two products liability claims against Global Marine: (1) negligent design; and (2) failure to warn of a defective and/or dangerous condition of the product. Neither claim is viable.

A. Negligent Design
Plaintiffs and Drake have failed to make out a prima facie case, or to raise a genuine issue of material fact, about the reasonable safety of the product as manufactured.
The applicable substantive law of products liability in admiralty is Section 402a of the Restatement (Second) of Torts (1965), which requires the plaintiff to prove: (1) that the defendant sold or manufactured the product; (2) that the product was unreasonably dangerous or was in a defective condition when it left the defendant's control; and (3) that the defect resulted in injury to plaintiff.[1]
To establish a prima facie case of defective design, the plaintiff must prove the availability of a(1) technologically feasible and (2) practical (3) alternative design that would have reduced or prevented the plaintiffs harm. Restatement (Third) of Torts § 2 Products Liability cmt. f (1998).[2] "Given inherent limitations on access to relevant data, the plaintiff is not required to establish with particularity the costs and benefits associated with adoption of the suggested alternative design." Id. However, "Sufficient evidence must be presented so that reasonable persons could conclude that a reasonable alternative could have been practically adopted." Id.
A broad range of factors may be considered in determining whether an alternative design is reasonable and whether its omission renders a product unsafei.e., whether the utility of the product fails to outweigh the danger inherent in its introduction into the stream of commerce. See Restatement (Third) of Torts § 2 Products Liability cmt. f (1998); Robinson v. Reed-Prentice Div. of Package Mach., Co., 49 N.Y.2d 471, 479, 426 N.Y.S.2d 717, 403 N.E.2d 440 (1980). In performing this risk-utility analysis, the New York Court of Appeals has identified seven factors for the trier of fact to consider: (1) the utility of the product to the public as a whole and to the individual user; (2) the likelihood that it will cause injury (also known as the nature of the product); (3) the availability of a safer design; (4) the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced; (5) the ability of the plaintiff to avoid injury by careful use of the product; (6) the degree of awareness of the potential danger of the product which can reasonably be attributed to the plaintiff; and (7) the manufacturer's ability to spread any cost related to improving the safety of the design. Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 109, 450 N.E.2d 204, 208-09, 463 N.Y.S.2d 398, 402-03 (1983). The Restatement also mentions the nature and strength of consumer expectations regarding the product, and the range of consumer choice among products. Restatement (Third) of Torts § 2 Products Liability cmt. f (1998).
A plaintiff is not required to introduce proof on all of these factors, as the relevance of each factor will vary from case to case, and the factors interact with one another. Id. For example, evidence of the magnitude and probability of foreseeable harm may be offset by evidence that the proposed alternative design would reduce the efficiency and the utility of the product. Id. Depending on the mix of these factors, a number of variations in the design of a given product may meet the "alternative design" test in Subsection (b) of the Restatement. Id.
At a minimum, however, the plaintiff, in order to make out a prima facie case (and to raise a genuine issue of fact when confronted with a motion for summary judgment), must present some admissible evidence that there exists a technologically feasible and commercially practicable alternative design for the manifold/valve apparatus.
Ordinarily, a plaintiff needs expert testimony in order to meet that burden. Although Subsection (b) of the Restatement does not require the plaintiff to produce expert testimony in every case, the absence of expert testimony is fatal to a case unless a reasonable alternative design is both obvious to, and understandable by, a layperson. The Restatement provides the following example:
When a manufacturer sells a soft stuffed toy with hard plastic buttons that are easily removable and likely to choke and suffocate a small child who foreseeably attempts to swallow them, the plaintiff should be able to reach the trier of fact with a claim that buttons on such a toy should be an integral part of the toy's fabric itself (or otherwise be unremovable by an infant) without hiring an expert to demonstrate the feasibility of an alternative safer design. Furthermore, other products already available on the market may serve the same or very similar function at lower risk and at comparable cost. Such products may serve as reasonable alternatives to the product in question.
Id.
This is the exception to the general rule that a plaintiff in a design defect case must ordinarily proffer expert testimony to establish the existence of a technologically feasible and practical alternative design that would have reduced or prevented the harm to the plaintiff. Indeed, in their briefs opposing Global Marine's motion, Plaintiffs and Drake cite not a single case where a plaintiff has prevailed in a design defect case without submitting expert evidence.
New York courts uniformly rule that competent, non-conclusory expert testimony is needed in cases involving more complex design issues. See, e.g., Voss, supra, 59 N.Y.2d at 104-05, 463 N.Y.S.2d 398, 450 N.E.2d 204 (expert testimony submitted on the feasibility of an alternative design of a circular power saw); Fitzpatrick v. Currie, 52 A.D.3d 1089, 861 N.Y.S.2d 431, 434 (3d Dep't 2008) (no expert testimony at all on design of automobile air bag fatal to design defect case); Preston v. Peter Luger Enters., Inc., 51 A.D.3d 1322, 858 N.Y.S.2d 828, 831 (3d Dep't 2008) (insufficient expert testimony on design of steak sauce bottle); D'Auguste v. Shanty Hollow Corp., 26 A.D.3d 403, 404, 809 N.Y.S.2d 555, 556-57 (2d Dep't 2006) (same where product was a ski binding); Pigliavento v. Tyler Equip. Corp., 248 A.D.2d 840, 841, 669 N.Y.S.2d 747 (3d Dep't 1998) (expert's conclusory testimony about need for guardrail on concrete mixer truck, which contained no foundational facts or data or applicable industry regulations, not sufficient to avoid summary judgment); Fallon v. Clifford B. Hannay & Son, Inc., 153 A.D.2d 95, 97, 550 N.Y.S.2d 135, 136 (N.Y.A.D. 3 Dept.1989) (same where product was a power reel).
In this case, Plaintiffs and Drake have not proffered expert testimony on the alternative design issue. A lay person would neither readily understand nor necessarily find obvious the design and engineering of an air filtration manifold, containing two filtration canisters, filters, valves from which the air enters and exits the filtration, and an emergency back-up valve attached to a scuba tank. See Fitzpatrick, supra, 861 N.Y.S.2d at 434. The design here at issue is certainly more complex than the design of a steak sauce bottle or a ski binding, yet insufficiently probative expert testimony was fatal to design defect claims in cases involving those products. See Preston, 51 A.D.3d 1322, 858 N.Y.S.2d 828; D'Auguste, 26 A.D.3d 403, 809 N.Y.S.2d 555.
Plaintiffs and Drake cannot justify their failure to provide expert testimony on this issue on the basis that Global Marine did not proffer such testimony either. Cf. Fitzpatrick, supra, 861 N.Y.S.2d at 434 (finding that the complex issues involved in the design and operation of an air bag make expert proof imperative, especially where an expert opinion is submitted in defense of the product). Plaintiffs and Drake have the burden to make out a prima facie case on the issue of alternative design, and where, as here, they do not do so, there is a complete failure of proof, and so no requirement that Global Marine do anything at all.
Further, Global Marine has submitted the testimony of Joseph Bocchino, the former principal of Global Marine, and Steven Barsky, an expert in commercial diving. Both of these experienced witnesses testified that the design of the manifold as manufactured by Global Marine (i.e., without any modification by Drake) has been widely used in the diving industry for forty years, and is still in use today. (See Barsky Report at 4; Bocchino Dep. 274:2-276:16; Bocchino Aff. ¶¶ 14, 15.) That evidence is uncontroverted, and it supports only one inferencethat the product as designed is reasonably safe. In the absence of expert testimony concerning feasible alternative designs that would lessen a diver's exposure, Plaintiffs fail to raise any issue of factlet alone a genuine issue of material facton the issue.
Lacking expert testimony, Plaintiffs and Drake actually rely on the aspects of the testimony of Mr. Bocchino and Steven Bielenda, Drake's liability expert, to establish that there were technologically feasible and practicable alternative designs. Their effort is unavailing.
Mr. Bielenda's comment at his deposition that if the manifold were "six inches wider ... it would be a great configuration" (Bielenda Dep. 196:21-197:7) is patently insufficient to raise a genuine issue of fact. First, nothing in the record suggests that Mr. Bielenda is qualified to testify about the design of the manifold. Drake has tendered him as an expert in commercial divingnot equipment designand Plaintiffs have moved in limine to exclude his testimony in his purported field of expertise, on the basis that he is in fact not an expert in commercial diving. (He has not performed a commercial dive for 20 years and he is not certified.[3]) Second, even if Mr. Bielenda had some expertise on the issue germane to the motion, his brief statement is purely conclusory, and is not buttressed with any empirical data, technological evidence, foundational facts or reference to industry standards and regulations. It is thus insufficient to raise a genuine issue of fact under the numerous New York cases cited above.
Like Mr. Bielenda, Mr. Bocchino testified that the frame could have been made six inches wider, so that no matter how the valve angle was placed, it would not have extended outside the frame. (Bocchino Dep. 254:3-255:2.) He also testified that an additional cross-piece could have been added to the manifold frame, to inhibit modification of the type undertaken here, at a cost in material of approximately $12.00 (at the time of the manufacture of the manifold in question) and at a cost of fabrication and installation of approximately $175.00. (See Bocchino Dep. 191:20-194:3.) From this, Plaintiffs argue that they have made out a prima facie case of alternative feasible design.
There is no dispute that Mr. Bocchino is an expert in commercial diving, although he has not been designated as an expert pursuant to Fed.R.Civ.P. 26. However, as was true of Mr. Bielenda, the record is devoid of any evidence that Mr. Bocchino has any expertise in engineering or technological design. Nor is his opinion buttressed by any of the empirical data or foundational facts that have been held to be necessary in cases like D'Auguste, Fallon and Preston.
Further, if Mr. Bocchino's testimony were admissible and probative, it would not support the conclusion Plaintiffs and Drake propoundnamely, that there was a technologically feasible and commercially practicable alternative design that would be safer for users like Mr. Guarascio. Mr. Bocchino is not of that opinion at all. In fact, he testified that "the way the frame was manufactured is the simplest, most cost effective, and was researched that it wouldfor any given thing that was done to it except for human stupidity, that this thing would do its job." (Bocchino Dep. 197:18-198:2.) Moreover, he testified that the air valves could have been modified in the manner that Drake modified them i.e., to protrude outside the frameeven with the addition of a cross-piece. (Bocchino Dep. 201:6-203:2.) Thus, his evidence thoroughly undermines Plaintiffs' and Drake's case.
As a result of the failure of the parties with the burden of proof (Plaintiffs and Drake) to make out a prima facie case of design defect, their claim against Global Marine is dismissed, with prejudice.

B. Failure to Warn
Plaintiffs argue that Global Marine failed to warn end users about the danger inherent in altering the placement of the valve outside the frame. This argument fails as a matter of law.
A product "is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe." Restatement (Third) of Torts § 2(c) (1998). However, a product seller is not liable for failing to warn regarding risks and risk-avoidance measures that should be obvious to, or known by, foreseeable product users. Id. at cmt. J. A manufacturer's duty to warn is limited where the user has certain knowledge or sophistication, professionally or otherwise, in regard to the product; there is no duty to warn members of a profession about the dangers generally known to that profession. Id. at cmt. a. Drake is trained in commercial diving and the use of manifolds, so it should know the dangers associated with commercial diving and manifolds, and should have been aware of the dangers associated with exposing the ball valve outside the manifold.
The only expert testimony about the need for a warning came from Global Marine's expert, Steven Barsky. Needless to say, Mr. Barsky's evidence does not support Plaintiffs' theory. He testified that the commercial diving industry has never placed warnings of this sort on manifolds and that none are necessary. (See Barsky Aff. ¶¶ 13, 15, 18.) Plaintiffs offer no expert evidencein fact, no evidence at all to contradict this testimony. Instead, they argue that a reasonable juror could find that it is not self-evident from the product design that the frame was meant to protect the valves. (See Bielenda Dep. 162:12-163:6; Drake Dep. 503:12-15.) This argument is purely conclusory and wholly speculative, and so fails as a matter of law.
The failure to warn claim against Global Marine is dismissed with prejudice.

CONCLUSION
For the foregoing reasons, Global Marine's motion for summary judgment is GRANTED and the Third Party Complaint is dismissed.
This constitutes the decision and order of the Court.
NOTES
[1] When a suit falls within admiralty jurisdiction, substantive admiralty law applies. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Where maritime law is silent, state law supplements the maritime law. Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Because the laws of New York and New Jersey are substantially the same both in design defect cases and failure to warn cases, New York law will supplement admiralty law as needed.
[2] Under the Restatement (Third) of Torts § 2(b), a product is defective in design "when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe."
[3] The irony that Plaintiffs would simultaneously attack Bielenda's credentials and rely on his testimony is hot lost on the Court.