■ Yun Tung Chow et al., Appellants, v Reckitt & Colman, Inc., et al., Respondents, et al., Defendant. (And Other Actions.) [891 NYS2d 402]—

Plaintiff Yun Tung Chow sustained an eye injury while using defendants' product, crystalline sodium hydroxide, packaged as a drain cleaner called "Lewis Red Devil Lye." When injured, Chow was attempting to use the lye to unclog a floor drain in the kitchen of the restaurant where he worked. A warning printed on the label of the bottle stated that the lye should be used only as directed. The warning also advised users to "[k]eep

face away from can and drain at all times" and that "[m]isuse may result in splash back and serious injury." The label's directions called for the insertion of only one tablespoon of lye directly into a drain. Despite the warning and directions, Chow mixed three spoonfuls of lye with three cups of water in an aluminum can. Without using eye protection, another precaution directed by the label, Chow bent over and poured the mixture into the drain. At that point, caustic liquid splashed back into Chow's face, causing the injury. The relevant negligence and strict liability causes of action are based on theories of inadequate warning and design defect. The court properly dismissed the inadequate warning claims. Chow testified that he made no attempt to read or to obtain assistance in reading the label; accordingly, any purported inadequacies in the product's labeling were not a substantial factor in bringing about the injury (*see Perez v Radar Realty*, 34 AD3d 305, 306 [2006]; *Sosna v American Home Prods.*, 298 AD2d 158 [2002]; *Guadalupe v Drackett Prods. Co.*, 253 AD2d 378 [1998]).*

Plaintiffs base their design defect claim upon lye's propensity to cause splashback. "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983] [citation and internal quotation marks omitted]).

On a summary judgment motion in a products liability case, "if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, the plaintiff must then produce direct evidence of a defect" (*Sideris v Simon A. Rented Servs.*, 254 AD2d 408, 409 [1998] [citation and internal quotation marks omitted]). In a design defect case, the evidence a plaintiff is required to produce must establish "that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner" (*Voss* at 108). Defendants have met their burden by making a prima facie showing that Chow's failure to heed the product warning was the sole proximate cause of the accident (*see e.g. Guadalupe*, 253 AD2d at 378; *Sabbatino v Rosin & Sons Hardware & Paint*, 253 AD2d 417 [1998], *lv denied* 93 NY2d 817 [1999]).

---

* Defendants also argue that the inadequate warning claims are precluded by the Federal Hazardous Substances Act (FHSA) (15 USC § 1261 *et seq.*). We decline to consider this argument inasmuch as it is made for the first time on appeal (*see Omansky v Whitacre*, 55 AD3d 373, 374 [2008]).

To meet their own burden, plaintiffs rely upon the affidavit of Meyer Rosen, a chemist and chemical engineer, who opines that Red Devil Lye is unreasonably dangerous and has a known propensity to cause splashback. Rosen next posits that nothing Chow did caused his injury. This aspect of Rosen's opinion lacks probative value because it omits critical discussion of Chow's use of more than the recommended one tablespoon of lye as well as his failure to keep his face away from the drain per the label's instructions. The omission is significant because a manufacturer need not incorporate safety features into its product so as to guarantee that no harm will come to every user no matter how careless or reckless (*see Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 481 [1980]). Rosen also opines that a safer alternative to the product can be created by diluting it to a three-percent-to-five-percent sodium hydroxide composition. How he arrived at these percentages is unexplained. Also, without citing a basis for his opinion, Rosen simply concludes that his recommended dilution of the product would provide drain cleaning power strong enough to open clogged drains although it would take "somewhat longer to do the job." Similarly unsupported is Rosen's postulation that bottling lye in a water-based solution would not change its chemical composition or render it ineffective. In considering the feasibility of a safer alternative design, "it must be recognized that two differently designed products that . . . are generally similar in function, may nonetheless yield results so different in quality as to make it impossible to characterize the design of the safer product as a feasible alternative to the design of the more hazardous product" (*see Rose v Brown & Williamson Tobacco Corp.*, 53 AD3d 80, 84 [2008], *affd sub nom. Adamo v Brown & Williamson Tobacco Corp.*, 11 NY3d 545 [2008], *cert denied* 558 US —, 130 S Ct 197 [2009]). Rosen's affidavit is insufficient to raise a triable issue of fact because it does not set forth the foundation for his conclusion that his suggested alternatives are feasible (*cf. David v County of Suffolk*, 1 NY3d 525 [2003]). As such, the affidavit falls short of explaining how the product can feasibly be made safer, as required by *Wengenroth v Formula Equip. Leasing, Inc.* (11 AD3d 677, 680 [2004]), a case cited by the dissent.

Rosen's choice of source materials is also dubious. Rosen cites a 1970 proposal by the Food and Drug Administration for an amendment of the FHSA so as to have liquid drain cleaners consisting of 10% or more of sodium hydroxide listed as banned hazardous substances. By its own terms, however, the proposal was not aimed at preventing splashback. Its purpose was to curb "serious injuries and some deaths following accidental

ingestion" of liquid drain cleaners by children under five years of age. Rosen also cites a 1989 letter to the Consumer Product Safety Commission from the Association of Trial Lawyers of America. It should go without saying that in the field of chemistry, a letter from a bar association would not fall within the "professional reliability" exception to the rule that an expert's opinion must be based upon facts in the record or personally known to the expert (*see e.g. Hambsch v New York City Tr. Auth.*, 63 NY2d 723, 725-726 [1984]). We have considered plaintiffs' remaining contentions and find them without merit. Concur—Catterson, J.P., McGuire and DeGrasse, JJ.

Moskowitz and Freedman, JJ., dissent in a memorandum by Freedman, J., as follows: I would reverse and deny summary judgment to defendants because plaintiffs have raised an issue of fact whether defendants' drain cleaning product, Lewis Red Devil Lye, was defectively designed.

Plaintiff Yun Tung Chow was seriously burned and blinded in one eye after Red Devil Lye splashed back onto his face while he was using it to clean a clogged floor drain at a restaurant where he was employed. Red Devil Lye was a powdered substance made of 100% sodium hydroxide, which is a powerful caustic agent capable of dissolving organic tissue by chemical action. Chow, who had immigrated to this country 11 years earlier and could not read English, testified that he had used Red Devil Lye numerous times before, but was unable to read the directions and warnings on its label, which instructed users to pour one tablespoon of Red Devil Lye directly into the clogged drain. Instead, since only about three spoonfuls of Red Devil Lye were left in the container, Chow put the remainder into an aluminum can, mixed in about three cups of water, and poured the mixture down the drain. When Chow bent over the drain to examine it, the contents spouted back onto his face and injured him.

I agree with the majority that the motion court properly dismissed plaintiffs' products liability claim based on the theory of inadequate warning. The Red Devil Lye container was labeled "poison," bore a picture of a skull and crossbones, and warned users to wear eye protection when using the product. The label warned of the risk of splashback if Red Devil Lye was used improperly, and that physical contact with the product could cause burning or blindness. Since Chow testified that he did not read the label or ask another person to read it to him, any purported inadequacies in the product's labeling were not a substantial factor in bringing about the injury (*see Perez v Radar Realty*, 34 AD3d 305, 306 [2006]; *Sosna v American Home Prods.*, 298 AD2d 158 [2002]; *Guadalupe v Drackett Prods. Co.*, 253 AD2d 378 [1998]).

While defendants did not meet their burden of demonstrating that the labeling on the can complied with the Federal Hazardous Substances Act (15 USC § 1261 *et seq.*) so as to preclude a state law improper labeling claim (*see Guadalupe* at 378), additional labeling would not have prevented Chow's injury.

However, plaintiffs raised a triable issue of fact with respect to their strict products liability claim based on defective design, by introducing expert testimony that Red Devil Lye was too dangerous to be marketed for use by general consumers rather than professionals. To establish a prima facie case for a defective design claim, the plaintiff must show that the manufacturer marketed a product that was not "reasonably safe" because of its defective design, and that the defective design was a substantial factor in causing injury (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107-109 [1983]). A defectively designed product is deemed not to be reasonably safe where a reasonable person, knowing at the time of manufacture about the defect, would conclude that the inherent risk of introducing the product into the stream of commerce outweighed its utility (*see id.* at 108). A plaintiff can proffer expert testimony to establish that a product was defectively designed (*see Warnke v Warner-Lambert Co.*, 21 AD3d 654, 656 [2005]). The risk-utility analysis may also involve a determination as to whether there is a feasible alternative design that would make the product safer. "Where . . . a qualified expert opines that a particular product is defective or dangerous, describes why it is dangerous, explains how it can be made safer, and concludes that it is feasible to do so, it is usually for the jury to make the required risk-utility analysis" whether the product was reasonably safe (*Wengenroth v Formula Equip. Leasing, Inc.*, 11 AD3d 677, 680 [2004]).

Plaintiffs' expert Meyer R. Rosen, a chemical engineer and chemist, as well as a Fellow of both the American Institute of Chemists and the Royal Society of Chemistry, opined that Red Devil Lye was unreasonably dangerous and had a known propensity to react explosively with water within a clogged drain and cause splashbacks. He averred that pouring the mixture of Red Devil Lye and water down the drain caused a chemical reaction that generated enough heat to boil the water and produce steam pressure, which rapidly expanded the caustic solution and other drain contents. Since the drain remained clogged, Rosen stated, the contents expanded "explosively" out of the drain onto Chow. He explained that ordinarily Mr. Chow would have seen bubbling in the aluminum container in which he mixed the lye with water, which would have alerted him to a potential danger, but this did not happen. Thus, Rosen concluded

that it was the pressure from the steam pipe and not the failure to follow the specific directions concerning either the amount of the product used or direct insertion into the drain that caused the injury.

While Rosen mentions the two 1970 Food and Drug Administration proposals to ban such substances and the 1989 letter to the Consumer Product Safety Commission, he does not, as the majority suggests, rely upon them for his opinion. Rather he sets forth what appear to be a clear explanation for the chemical reaction that occurred and recommendations for plausible alternatives, some of which are similar to products on the market. To characterize the utility of the suggested alternatives as "unsupported" or "conclusory" is unsound, because such products either exist or may be easily manufactured.

Rosen acknowledged that Red Devil Lye was an effective drain cleaner, but added that "the risk far outweighs its utility," since "the chemical and toxicological properties of [sodium hydroxide] make it among the most dangerous chemicals known." He further opined that defendants could have made a safer alternative by diluting the sodium hydroxide to a 3%-to-5% lye solution, and that this solution "would still be strong enough to open clogged drains, albeit taking somewhat longer to do the job." As another alternative, Rosen suggested selling a premade lye and water solution, which "would not change the chemical and . . . would still be as effective."[1] He concluded that in his opinion Red Devil Lye was too dangerous to be marketed for use by lay people.[2]

Defendants claim that the diluted sodium hydroxide products that plaintiffs' expert proposed as alternatives are not reasonably equivalent to Red Devil Lye because they would take longer to unclog drains. As support for their position, defendants cite to *Felix v Akzo Nobel Coatings* (262 AD2d 447 [1999]) and *Adamo v Brown & Williamson Tobacco Corp.* (11 NY3d 545 [2008], *cert denied* 558 US —, 130 S Ct 197 [2009]), in which

---

1. As a final alternative, Rosen proposed that defendants sell Red Devil Lye, safety goggles, a face shield and rubber gloves packaged together as a single product. However, a product that included those safety items would cost so much more than Red Devil Lye alone that the two cannot be deemed functional equivalents.

2. As further support for their claim, plaintiffs also offered a 1989 letter from the Association of Trial Lawyers of America to the United States Consumer Product Safety Commission stating that the Association knew of 21 instances in which the use of Red Devil Lye had caused serious injuries from splashbacks, and that many safer drain cleaners were on the market. The letter requested that the Safety Commission remove Red Devil Lye from consumer markets and issue a recall.

proposed alternatives to a defective product were found not to be equivalents. Both cases are distinguishable. The product in question in *Felix* was a solvent-based, quick-drying lacquer floor sealer that was highly flammable.[3] The plaintiff argued that a safer, water-based lacquer sealer could have been substituted, but the Court held that the water-based sealer was a functionally different product from solvent-based lacquer because it took hours longer to dry, differed greatly in price, and produced results that did not match solvent-based lacquer in the appearance, hardness, and scratch resistance of the finish (262 AD2d at 448-449). In this case, the functional difference between Red Devil Lye and the safer dilutions would be minimal. The dilutions would be as effective at accomplishing Red Devil Lye's essential purpose of unclogging drains, and would at most take somewhat longer to work.

In *Adamo*, the Court of Appeals held that "light" cigarettes are functionally different products from regular cigarettes containing higher levels of nicotine because it found that the function of cigarettes is to give pleasure to smokers, and that light cigarettes are less satisfying to smokers than regular cigarettes. *Adamo* is similarly inapposite because dilutions would not impair Red Devil Lye's function of unclogging drains. Moreover, although cigarettes may cause harm over a long period of time, they do not present the immediate type of danger present here.

Accordingly, I would reinstate plaintiffs' claim sounding in strict products liability and let the finder of fact determine whether Red Devil Lye's utility outweighed its inherent danger.

(January 7, 2010)

---

**3.** This Court cited *Felix* with approval in *Perez v Radar Realty* (34 AD3d 305, 306 [2006]), which also involved a lacquer-based sealer.