[950 NE2d 113, 926 NYS2d 377]

YUN TUNG CHOW et al., Appellants, v RECKITT & COLMAN, INC.,
et al., Respondents, et al., Defendant. (And Other Actions.)

Argued March 24, 2011; decided May 10, 2011

## POINTS OF COUNSEL

*Lisa M. Comeau,* Garden City, and *Ronemus & Vilensky,* New York City, for appellants. The Appellate Division erred in affirming Supreme Court's award of summary judgment to defendants. (*Gilbert Frank Corp. v Federal Ins. Co.,* 70 NY2d 966; *GE Capital Mtge. Servs. v Mittelman,* 238 AD2d 471; *Nigro, D'Anna & Utrecht v Collard,* 208 AD2d 911; *Antonucci v Emeco Indus.,* 223 AD2d 913; *Porter v Uniroyal Goodrich Tire Co.,* 224 AD2d 674; *Colt v Great Atl. & Pac. Tea Co.,* 209 AD2d 294; *Cobrin v County of Monroe,* 212 AD2d 1011; *Vasquez v City of New York,* 210 AD2d 156; *McCue v Battaglia,* 211 AD2d 625; *Daley v Gemini Bakery Equip. Co.,* 228 AD2d 210.)

*Ahmuty, Demurs & McManus,* Albertson (*Brendan T. Fitzpatrick* of counsel), for Reckitt & Colman, Inc. and another, respondents. The Supreme Court and Appellate Division correctly dismissed Yun Tung Chow's design-defect and failure-to-warn claims because his failure to read and heed the warnings and straightforward instructions on the bottle constituted the sole, proximate cause of the accident. (*Heller v U. S. Suzuki Motor Corp.,* 64 NY2d 407; *Codling v Paglia,* 32 NY2d 330; *Micallef v Miehle Co., Div. of Miehle-Goss Dexter,* 39 NY2d 376; *Torrogrossa v Towmotor Co.,* 44 NY2d 709; *Davey v Dolan,* 46 AD3d 854; *Guadalupe v Drackett Prods. Co.,* 253 AD2d 378; *Andre v Pomeroy,* 35 NY2d 361; *Alvarez v Prospect Hosp.,* 68 NY2d 320; *Zuckerman v City of New York,* 49 NY2d 557; *Robinson v Reed-Prentice Div. of Package Mach. Co.,* 49 NY2d 471.)

*Fiedelman & McGaw,* Jericho (*James K. O'Sullivan* of counsel), and *Law Offices of Alan I. Lamer,* Elmsford, for Malco Products, Inc., respondent. I. A product that consists of a chemical compound is not "designed" and therefore cannot be the subject of a claim for defective design, absent proof that it could be produced in a manner that made it safer without significantly

affecting its utility. (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102; *Denny v Ford Motor Co.*, 87 NY2d 248; *Adamo v Brown & Williamson Tobacco Corp.*, 11 NY3d 545.) II. It was improper to consider the affidavit of the expert, because of plaintiff's disregard of CPLR 3101 (d). (*Brill v City of New York*, 2 NY3d 648; *Gerry v Commack Union Free School Dist.*, 52 AD3d 467.) III. Plaintiff's own behavior was the sole proximate cause of his injuries. (*Guadalupe v Drackett Prods. Co.*, 253 AD2d 378; *Sabbatino v Rosin & Sons Hardware & Paint*, 253 AD2d 417; *Sosna v American Home Prods.*, 298 AD2d 158; *Olan v Farrell Lines*, 64 NY2d 1092.) IV. Plaintiff's failure to warn claim fails to state a cause of action pursuant to the Federal Hazardous Substances Act and such a claim would be meritless in any event. (*Beyrle v Finneron*, 229 AD2d 1010; *Liz v Zinsser & Co.*, 253 AD2d 413; *Leon v Martinez*, 84 NY2d 83; *Fleischman v Peacock Water Co., Inc.*, 51 AD3d 1203; *Matter of Allstate Ins. Co. v Perez*, 157 AD2d 521.)

### OPINION OF THE COURT

Chief Judge LIPPMAN.

Plaintiff, Yun Tung Chow, and his wife brought this products liability action against the defendant entities responsible for the manufacture, distribution and package design of a product sold under the brand name Lewis Red Devil Lye (RDL). Defendants moved for summary judgment, and Supreme Court granted the motion. The Appellate Division affirmed, with two Justices dissenting solely as to the propriety of summary dismissal of the defective design cause of action (69 AD3d 413 [1st Dept 2010]). Plaintiffs then appealed to this Court as of right (CPLR 5601 [a]). We conclude, in accordance with settled summary judgment and products liability principles, that a defendant moving for summary judgment in a defective design case must do more than state, in categorical language in an attorney's affirmation, that its product is inherently dangerous and that its dangers are well known. Rather, to be entitled to summary judgment in such a case, a defendant must demonstrate that its product is reasonably safe for its intended use; that is, the utility of the product outweighs its inherent danger. Defendants failed to make such a showing here.

RDL is 100% sodium hydroxide, a chemical compound commonly known as lye. The product is sold in the form of dry crystals, and it is packaged and marketed to laypersons as a product that clears clogged drains.

Plaintiff was injured while using RDL to clear a clogged floor drain in the kitchen of the Manhattan restaurant where he

worked. Plaintiff cannot read English and testified through an interpreter that, although he had used RDL many times in the past, he never read the instructions and warnings printed on RDL's bottle. Instead, he learned how to handle RDL by following the examples of others he observed using the product. Normally, he testified, he would take one spoonful of RDL, add one cup of water, and then pour that solution down the clogged drain. Then, "right after that," he would flush the drain with water and the drain would be clear.

On the day in question, plaintiff noticed that the restaurant's kitchen floor drain had become clogged. He located the restaurant's bottle of RDL, but found that there was little remaining in the bottle, so he put all that was left, approximately three spoonfuls, into a dry aluminum container. Plaintiff then poured roughly three cups of cold water into the container. He did not observe any reaction in the container as he walked four steps to the drain, bent at the waist, and poured the solution down the floor drain. Immediately after plaintiff poured the solution down the drain, it splashed back out of the drain and onto plaintiff's face. He sustained serious burns and ultimately lost sight in his left eye as a result of the splash back.

As defendants stress, plaintiff's handling of the product was not in accordance with the label's instructions and warnings. The label warns that splash back and serious injury may occur if RDL is not used as directed. Under "DIRECTIONS FOR USE," the label states that protective eyewear and rubber gloves are to be used when handling RDL, and the user is advised that one should "NEVER POUR LYE DIRECTLY FROM CONTAINER INTO DRAIN." Instead, a plastic spoon is to be used to dispense the product (the user is specifically advised to keep RDL "away from contact with aluminum utensils"). One tablespoon is to be spooned into the clogged drain, then the user is to wait 30 minutes. After 30 minutes, the user may check to see if the drain is clear by "adding several cups of COLD water." If the drain is not clear the label advises that a repeat application should be attempted only once, and if the drain continues to be clogged a plumber should be consulted.

The Appellate Division was divided with respect to whether defendants were entitled to summary judgment on plaintiffs' defective design claim, but it was unanimous in affirming summary judgment on plaintiffs' strict products liability cause of

action based on an alleged failure to warn (69 AD3d at 416).* The adequacy of a product's warnings, however, even when coupled with a user's failure to read or follow them, does not end the inquiry with respect to a defective design claim.

Our law in this area is well established. A "defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983] [internal quotation marks and citation omitted]). If the "utility" of a product "does not outweigh the danger inherent in its introduction into the stream of commerce," then the product is defectively designed (*id.* [internal quotation marks and citation omitted]).

Defendants focus on plaintiff's mishandling of the product and asserted deficiencies in his expert's affidavit, but, as with any motion for summary judgment, defendants must first show an entitlement to judgment as a matter of law (*see Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 967 [1988]). The issue of whether a product is defectively designed such that its utility does not outweigh its inherent danger is generally one "for the jury to decide . . . in light of all the evidence presented by both the plaintiff and defendant" (*Voss*, 59 NY2d at 108).

In support of their motion here, however, defendants state only, in effect, that lye is what it is, that everyone knows lye is dangerous, and that any variation in RDL's composition would, by necessity, result in a different product because such an altered product would not be 100% sodium hydroxide. While it is true that lye is dangerous and that this product is lye, a mere statement in an attorney's affirmation in support of a motion for summary judgment to that effect does not result in a shift of the burden to plaintiff to then explain how RDL could be made safer. At this stage, defendants cannot rely simply on the fact that their product is what they say it is and that everyone knows that lye is dangerous; that only begs the question at the heart of the merits of the defective design claim: knowing how dangerous lye is, was it reasonable for defendants to place it into the stream of commerce as a drain cleaning product for use by a layperson? Defendants offered no answer to this question, and thus, did not demonstrate their entitlement to judgment as a matter of law.

---

* The latter portion of that ruling is not challenged on this appeal. Claims made against other parties are also not in issue on this appeal.

Plaintiff's mishandling of the product here, alone, is not enough to entitle defendants to summary judgment. Summary judgment in a strict products liability case may be granted on the basis of the plaintiff's conduct when the plaintiff's actions constituted "the sole proximate cause" of his or her injuries (*Amatulli v Delhi Constr. Corp.*, 77 NY2d 525, 534 [1991]). Defendants failed to show that plaintiff's handling of RDL constituted the sole proximate cause of his injuries because a factfinder could conclude on the basis of the record before us that the product was so inherently dangerous that it should never have found its way into the stream of commerce as packaged and marketed (*see Voss*, 59 NY2d at 107 ["Liability attaches when the product, as designed, presents an unreasonable risk of harm to the user"]). That is to say, even with adequate warnings, a product may be so dangerous, and its misuse may be so foreseeable, that a factfinder employing the required risk-utility analysis our case law has established could reasonably conclude that "the utility of the product did not outweigh the risk inherent in marketing" it (*Denny v Ford Motor Co.*, 87 NY2d 248, 257 [1995] [internal quotation marks and citation omitted] [listing seven factors identified as relevant to the risk-utility analysis: "(1) the product's utility to the public as a whole, (2) its utility to the individual user, (3) the likelihood that the product will cause injury, (4) the availability of a safer design, (5) the possibility of designing and manufacturing the product so that it is safer but remains functional and reasonably priced, (6) the degree of awareness of the product's potential danger that can reasonably be attributed to the injured user, and (7) the manufacturer's ability to spread the cost of any safety-related design changes" (*id.*)]).

Defendants here may ultimately prevail on the merits by showing that RDL's utility outweighs its inherent danger and by demonstrating through expert testimony that it was not feasible to design a safer, similarly effective and reasonably priced alternative product (*see e.g. Voss*, 59 NY2d at 108-109). On this motion, however, merely stating in an attorney's affirmation that RDL is dangerous, that everyone knows it is dangerous, and that precise warnings of its danger were given and not followed was insufficient to entitle defendants to summary judgment as a matter of law. Defendants were required to demonstrate that RDL was reasonably safe for its intended use, but they offered no such evidence.

Accordingly, the Appellate Division order should be reversed, with costs, and the motion of defendants-respondents for summary judgment denied.

SMITH, J. (concurring). I join the Court's unanimous opinion. I write separately to point out that our decision is the result not of the merit of plaintiff's case, but of a feature of New York procedural law.

As the Court's opinion says, the issue on plaintiff's design defect claim is whether lye is reasonably safe for its intended use. This is an issue on which plaintiff will have the burden of proof at trial. "The plaintiff . . . is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108 [1983]). To do this, plaintiff will have to show that the product can be designed in such a way "that it is safer but remains functional" (*id.* at 109)—i.e., that a safer version of the product would be of equivalent utility (*Adamo v Brown & Williamson Tobacco Corp.*, 11 NY3d 545 [2008]; *Felix v Akzo Nobel Coatings*, 262 AD2d 447 [2d Dept 1999]).

Here, plaintiffs tried to meet that burden in an expert's affidavit opposing defendants' summary judgment motion, but fell short. The expert proposed several products that he called "safer" alternatives to lye, but he did not show that any alternative capable of preventing plaintiff's accident would perform as well as lye at a reasonable cost. Describing his principal proposal—a 3% to 5% solution of lye—the expert admitted that it would take "somewhat longer to do the job" of unclogging drains, and did not say how much longer.

If a record identical to the present one were developed at trial, plaintiff would fail to meet his burden of proof and the court would be required to direct a verdict for defendants. One might think, therefore, that the record would entitle defendants to summary judgment. But one who thought that would be wrong under New York law, because the initial burden to make an evidentiary showing on summary judgment rests on the moving party. We said in *Alvarez v Prospect Hosp.*:

> "As we have stated frequently, the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate

the absence of any material issues of fact. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers." (68 NY2d 320, 324 [1986] [citations omitted]; *see also Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985].)

Thus the inadequacy of plaintiff's expert's affidavit is irrelevant here, as the Court's opinion points out, because defendants, in support of their summary judgment motion, produced no evidence of the absence of a safer but functionally equivalent alternative to lye. Defendants relied simply on a statement in an attorney's affirmation that "the product at issue . . . cannot be designed differently without making it into an entirely different product" (emphasis omitted). The burden of making the necessary evidentiary showing might not have been hard to meet: an affidavit from someone knowledgeable in the industry—either a retained expert or an employee of one of the defendants—could have done it. But the burden was not met.

The federal courts have a different rule, which would probably lead to a different result in this case. As to issues on which the nonmoving party would have the burden of proof at trial, the United States Supreme Court has rejected the idea "that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact," and has held instead that "the burden on the moving party may be discharged by . . . pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case" (*Celotex Corp. v Catrett*, 477 US 317, 325 [1986]). If we were writing on a clean slate, I might prefer the *Celotex* rule to ours, but we are not, and I am not urging a change in our law. I am urging, however, that parties moving for summary judgment in the future be alert to the burden that New York law places on a moving party.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge SMITH in a separate concurring opinion in which Judge READ concurs.

Order reversed, etc.