[64 NYS3d 205]

M.H., an Infant, et al., Respondents-Appellants, v Bed Bath & Beyond Inc., Appellant-Respondent. (And a Third-Party Action.)

First Department, November 9, 2017

**APPEARANCES OF COUNSEL**

*Aaronson Rappaport Feinstein & Deutsch, LLP*, New York City (*Elliott J. Zucker* and *Deirdre E. Tracey* of counsel), for appellant-respondent.

*Cellino & Barnes, P.C.*, Garden City (*Stephen E. Barnes* and *Ellen B. Sturm* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

KERN, J.

This action arises from injuries allegedly sustained by plaintiffs when a fire pot and fuel gel purchased from defendant suddenly combusted and exploded. The product at issue is a combination of a ceramic pot, called the "FireBurners" Pot, with a stainless steel fuel reservoir at its center and a bottle of

gelled fuel for use with the fire pot called "FireGel." Plaintiffs allege that their injuries occurred when the fire pot was refueled with the fuel gel and an explosion occurred. A red sticker affixed to the fire pot itself that must be removed in order to use the product states: "WARNING . . . DON'T REFILL UNTIL FLAME IS OUT & CUP IS COOL." Additionally, a pamphlet entitled "CARE AND USE INSTRUCTIONS," which comes with the product, states in the "WARNINGS" section: "Do not add fuel when lit and never pour gel on an open fire or hot surface." The label on the back of the fuel gel bottle instructs: "NEVER add fuel to a burning fire," and under the word "WARNING," which is in bold, it states: "DANGER, FLAMMABLE LIQUID & VAPOR." The deposition testimony is inconsistent as to whether the explosion occurred after the fire pot was refueled with fuel gel while the fire pot was still hot or lit.

One of plaintiffs' experts, Stuart M. Statler, opined that the product was not reasonably safe for its intended use and was defectively designed for a number of reasons, including that when the product is being used and the fire pot is refueled with the fuel gel, the fuel gel can combust and explode, destroying property and injuring persons in its vicinity, that when the fuel gel inside the stainless steel cup burns down, it can appear to the user that the flame is extinguished and that the gel has been exhausted when in fact remnants of fuel gel remain in the steel cup and a flame that is difficult to visually discern continues to burn and that the viscosity of the fuel gel renders it highly sticky and especially adherent to things with which it comes in contact, including skin and clothing, which increases the difficulty of extinguishing the flaming gel.

We first turn to plaintiffs' motion for partial summary judgment on the defective design claim.

> "In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer [or seller] breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 [1983]).

The Court of Appeals has held that in order to determine whether a product was designed so that it was not reasonably

safe, the risks inherent in the product must be balanced against the product's utility and cost, which requires the consideration of certain factors, including "the utility of the product to the public as a whole and to the individual user," "the nature of the product—that is, the likelihood that it will cause injury," "the availability of a safer design," "the potential for designing and manufacturing the product so that it is safer but remains functional and reasonably priced," "the ability of the plaintiff to have avoided injury by careful use of the product," "the degree of awareness of the potential danger of the product which reasonably can be attributed to the plaintiff" and "the manufacturer's ability to spread any cost related to improving the safety of the design" (*Voss*, 59 NY2d at 109). Additionally, with regard to the misuse of a product, it may be determined that "even with adequate warnings, a product may be so dangerous, and its misuse may be so foreseeable, that . . . 'the utility of the product did not outweigh the risk inherent in marketing' it" (*Yun Tung Chow v Reckitt & Colman, Inc.*, 17 NY3d 29, 34 [2011]).

■ In the present case, plaintiffs have established, as a matter of law, that the product at issue, consisting of the fire pot and the fuel gel, was defectively designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiffs' injuries. Plaintiffs have submitted evidence, including expert affidavits, demonstrating that: the product has minimal utility, serving a purely decorative purpose; that it poses an extraordinary safety risk in that it can explode and propel flaming fuel gel onto persons in its vicinity and cause them to catch fire when a person attempts to light the fire pot with the fuel gel while the fire pot is already lit or hot; that when the fuel gel in the fire pot is lit but burns down, it has a nearly invisible flame, which can mislead users into perceiving the flame as extinguished and the fuel gel exhausted; that the viscosity of the fuel gel makes it easily adherent to skin and clothing which makes it very difficult to extinguish; and that alternative and safer designs are available in that instead of designing the fire pot with a deep-seated stainless steel cup into which the fuel gel is poured, the product could have been designed using fuel gel in nonrefillable metal cans or cartridges that get inserted directly into the fire pot, which would eliminate the design defect that causes an explosion upon refueling the fire pot with the fuel gel as well as the related dangers flowing from the fuel gel flame being difficult to visually discern when the fuel gel burns down and

the viscosity of the fuel gel. Finally, the experts opined that the defective design of the product was a substantial factor in causing plaintiffs' injuries.

In opposition, defendant has failed to raise an issue of fact as to whether the product was designed in a reasonably safe manner or whether the defective design was a substantial factor in causing plaintiffs' injuries. Initially, defendant does not seriously dispute any of the evidence provided by plaintiffs. To the extent defendant contends that there is an issue of fact as to how the accident occurred based on plaintiffs' expert's alleged statement that the fuel gel bottle itself was defectively designed, this contention is without merit. Mr. Statler opined that the "FireBurners and FireGel are not reasonably safe for their intended use and are defectively designed for multiple reasons," including that "when FireBurners are being used and are refilled or refueled with FireGel, the FireGel can combust and explode and cause flaming FireGel to be propelled onto persons and property in their vicinity" and that "[t]his condition alone renders those products unreasonably dangerous for their intended use." Mr. Statler did not state that the bottle of fuel gel itself is the defectively designed product.

To the extent defendant contends that there is an issue of fact as to whether the alleged misuse of the product substantially caused plaintiffs' injuries, this contention is without merit. Defendant points to the fact that the product contained warnings that the fire pot should not be refilled with fuel gel until the flame is out and the cup inside the fire pot is cool and it points to inconsistent testimony in the record regarding whether the fire pot was indeed refueled while it was still lit or hot. Plaintiff Nancy R. testified that "[i]t didn't look like [the fire pot] was lit" when it was being refueled. However, another witness testified that prior to the explosion, the fire pot was "already lit," but "just a little bit," and that it "didn't look like it was lit." Another witness testified that before the explosion, there was "no heat" and "no flame." However, in a prior written statement, that same witness indicated that there was a "weak" flame.

However, even assuming there was a misuse of the product, the misuse fails to raise an issue of fact sufficient to defeat plaintiffs' motion for summary judgment on the design defect claim. We find, as a matter of law, that even with adequate warnings, the fire pot and fuel gel, when used together, were so dangerous and were so defectively designed that their misuse

was foreseeable (*see Yun Tung Chow*, 17 NY3d at 34). With regard to the foreseeability of misuse of the product, Mr. Statler opined as follows:

> "The danger posed [by the product] is severe, and the likelihood of the danger occurring during normal or foreseeable use of the product is high. In addition, the condition is a latent or hidden condition, which is not obvious or readily apparent from a visual evaluation of the products, and which would not be known to or expected by lay persons who are not expert in ethanol-based materials. The latent nature of this highly explosive condition renders these products even more dangerous because it increases the likelihood of the danger occurring during normal or foreseeable use of the product."

As defendant has not disputed this evidence, plaintiffs are entitled to summary judgment on their design defect claim.

We next turn to defendant's motion for summary judgment dismissing the manufacturing defect, breach of express warranty, failure to warn and punitive damages claims and find that it should have been granted. Initially, with regard to the manufacturing defect claim, plaintiffs concede that they are not pursuing that claim.

With regard to the breach of express warranty claim, defendant established prima facie that plaintiffs did not rely on any express warranty (*see Meyer v Alex Lyon & Son Sales Mgrs. & Auctioneers, Inc.*, 67 AD3d 547 [1st Dept 2009]) and plaintiffs failed to address the breach of warranty claim in opposition to defendant's motion (*see Saidin v Negron*, 136 AD3d 458 [1st Dept 2016], *lv dismissed* 28 NY3d 1069 [2016]).

Defendant is also entitled to summary judgment dismissing the failure to warn claim because even assuming that the product warning labels did not comply with the requirements of the Federal Hazardous Substances Act (15 USC § 1261 *et seq.*), plaintiffs' witnesses either admitted that they had not read the labels or could not remember whether anyone read the labels (*see Medina v Biro Mfg. Co.*, 151 AD3d 535 [1st Dept 2017]).

Additionally, defendant is entitled to summary judgment dismissing the claim for punitive damages as defendant's actions, while they may have been negligent, do not rise to the high level of "moral culpability" necessary to support an award of punitive damages. Although defendant could have done more

to ensure the product's safety, defendant took a variety of steps to vet the product and to investigate reported incidents and its awareness of, at most, two unsubstantiated accident reports did not justify a full product recall (*see Camillo v Geer*, 185 AD2d 192, 194-195 [1st Dept 1992]).

Finally, defendant showed "good cause" for the delay in making its motion for summary judgment (*see* CPLR 3212 [a]). It is undisputed that discovery was ongoing when the note of issue was filed and that the motion court was aware of and acquiesced in the ongoing discovery (*see Gonzalez v 98 Mag Leasing Corp.*, 95 NY2d 124, 129 [2000]; *Butt v Bovis Lend Lease LMB, Inc.*, 47 AD3d 338, 340 [1st Dept 2007]; *Quizhpi v Lochinvar Corp.*, 12 AD3d 252 [1st Dept 2004]).

Accordingly, the resettled order of the Supreme Court, New York County (Debra A. James, J.), entered January 10, 2017, which, insofar as appealed from as limited by the briefs, denied defendant's motion for summary judgment dismissing the manufacturing defect, breach of express warranty, failure to warn, and punitive damages claims, and denied plaintiffs' motion for partial summary judgment on the defective design and failure to warn claims, should be modified, on the law, to grant defendant's motion and the portion of plaintiffs' motion that seeks partial summary judgment on the defective design claim, and otherwise affirmed, without costs. Defendant's appeal from the order of the same court and Justice, entered December 23, 2016, which denied defendant's motion for summary judgment, and denied plaintiff's cross motion for summary judgment, should be dismissed, without costs, as superseded by the appeal from the January 10, 2017 order.

MANZANET-DANIELS, J.P., MAZZARELLI, MOSKOWITZ and KAHN, JJ., concur.

Resettled order, Supreme Court, New York County, entered January 10, 2017, modified, on the law, to grant defendant's motion and the portion of plaintiffs' motion that seeks partial summary judgment on the defective design claim, and otherwise affirmed, without costs. Appeal from order, same court, entered December 23, 2016, dismissed, without costs, as superseded by the appeal from the January 10, 2017 order.