# United States Court of Appeals
# for the Fifth Circuit

No. 22-40530
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
March 2, 2023
Lyle W. Cayce
Clerk

Doctor Madhavan Pisharodi,

*Plaintiff—Appellant*,

*versus*

Wells Fargo Bank, N.A.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:19-CV-41

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

Dr. Madhavan Pisharodi appeals the district court's summary judgment in favor of Wells Fargo Bank ("Wells Fargo") in a dispute over personal belongings that disappeared from his security drop box with the bank. Because the second agreement that Pisharodi entered with Wells Fargo controls this dispute and expressly time-bars his claims, we AFFIRM.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40530

## I.     Background

### A.     *Pisharodi Agrees to Lease a Safe Deposit Box with Wells Fargo*

In March 1989, Pisharodi executed a lease agreement ("the 1989 lease") for a safe deposit box (the "SDB") with Wells Fargo at its 835 East Levee Street location in Brownsville, Texas.[1]  The SDB went largely unused for the next twenty years, until a fire that damaged his home prompted him to consider using the SDB to safeguard his valuables. On July 20, 2009, He stored some of his personal belongings—including gold coins, gold bars, and jewelry valued at $897,412.60—in the SDB. The same day, he signed another lease agreement ("the 2009 lease"). The new agreement contained a merger clause, providing that Pisharodi's new contract "supersede[d] any prior oral or written agreements regarding [the SDB]." The new contract also stated: "This Agreement replaces a Lease/Agreement with a commencement date of _____ for Box Number ____." The document was signed by all relevant parties without filling in the details on when the 2009 lease replaced the 1989 lease.

On May 14, 2015, Wells Fargo mailed a notice to Pisharodi informing him of an upcoming branch relocation to 744 East Elizabeth Street in Brownsville, Texas. In the notice, it explained that the SDB would remain unopened throughout the move. It confirmed Pisharodi's receipt of the notice and agreement to the relocation by obtaining the signature of an individual named Veronica Pisharodi. Wells Fargo made the move, with the SDB in tow, on June 13, 2015.

---

[1] Pisharodi claims that he did not keep a copy of the 1989 lease agreement and Wells Fargo was unable to produce it. So, it is absent from the record.

B.    *The Contents of Pisharodi's Safe Deposit Box Disappears*

On April 13, 2017, Pisharodi returned to Wells Fargo and accessed his box. To his surprise, he found that the SDB had some documents, but none of his personal belongings. At first, he told Wells Fargo that he must have only kept documents in the SDB. But that story later changed after some recollection by him. Ultimately, he filed a police report and opened an investigation with Wells Fargo. The police investigation was largely fruitless, proffering no evidence of an illegal break in or drilling of the SDB. The investigation only discovered a stray fingerprint, but it was of insufficient quality for the department to use.

Wells Fargo also investigated Pisharodi's claim and denied it in June 2017. Its investigation rendered the following conclusions: (1) the SDB was intact, having never been drilled before or after the relocation process; (2) had the SDB been drilled at any point it would not be accessible by Pisharodi's keys; (3) Pisharodi accessed the SDB with the same set of keys in August 2013 and April 2017 and he admits that he never lost the keys throughout this period; and (4) the police found no evidence of drilling or forced entry into the SDB. Dissatisfied with the results of the investigation, Pisharodi sued.

C.    *Procedural History*

Pisharodi sued in a Texas state trial court, alleging breach of contract, Texas Deceptive and Trade Practices Act ("DTPA") violations, negligence, and conversion. Wells Fargo removed the case on diversity jurisdiction grounds. It later moved for summary judgment, requesting a dismissal of all claims. The district court assigned the case to a magistrate judge, who issued a report and recommendation ("R&R") in favor of granting Wells Fargo's motion. The district court adopted the R&R and held that Pisharodi take nothing in his suit against Wells Fargo. Pisharodi subsequently filed a motion

for a new trial, which the district court also denied. He timely appealed the district court's determination that Wells Fargo was entitled to summary judgment.[2]

On appeal, Pisharodi asks us to consider whether the district court erred in determining that the 2009 lease was a valid and enforceable agreement between the parties, and that there was no genuine dispute of material fact concerning the contract's enforceability. After that threshold inquiry, he asks us to consider whether the district court erred in granting summary judgment on his various tort theories and DTPA claims.

## II.     Standard of Review

"We review grants of summary judgment de novo, applying the same standard as the district court." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 564, 587 (1986) (citation omitted).

"All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *La. Crawfish Producers*, 852 F.3d at 462. However, summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). We may

---

[2] His appeal does not mention the district court's denial of his motion for a new trial.

affirm "on any ground supported by the record, including one not reached by the district court." *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (internal quotations and citation omitted).

### III.    Discussion

#### A.    *Whether The 2009 Lease Controls This Dispute*

Pisharodi argues that the district court erred in granting Wells Fargo's motion for summary judgment because it relied on an invalid and unenforceable agreement. In support of his contention, he highlights that the 2009 lease failed to expressly state that it replaced the 1989 lease because that specific provision was left blank in the agreement. With that provision blank, he asserts that there is a genuine factual dispute as to whether the 2009 lease controls this dispute. We disagree.

At its core, this issue can be reduced to one fact: Pisharodi entered a lease agreement with Wells Fargo in 1989 and then entered another in 2009. By asserting that the 2009 lease does not control, he necessarily argues that the 1989 lease must. Neither party disputes that they agreed to contract with one another on two separate occasions.[3] Rather, Pisharodi asserts that there is no proof—or at least a genuine factual dispute—that he intended for the 2009 lease to supersede the 1989 lease. But his intent for one agreement to supplant the other is irrelevant under Texas law. In Texas, where two leases conflict with one another, the later agreement applies to any inconsistencies between the two. *See Hall v. Prof. Leasing Assoc.'s*, 550 S.W.2d 392, 394 (Tex. App.—Dallas 1977, no writ) ("[W]hen two contracts between the same parties are inconsistent, the later contract is conclusively presumed to have

---

[3] The record is replete with evidence that Pisharodi understood that the 2009 lease was a legally binding contract when he signed it. Indeed, he conceded as much in his briefing.

superseded the earlier."); *see also Adam Tech. Int'l S.A. de C.V. v. Sutherland Glob. Servs. Inc.*, 2010 WL 11470723 at *3 (N.D. Texas Oct. 18, 2010) ("Under Texas law, when parties have entered into two contracts with inconsistent terms that cannot subsist together, the rule of contracts conclusively presumes that the latter contract supersedes the earlier contract."). Because the 2009 lease is a valid contract that was entered into after the 1989 lease, it supersedes the 1989 lease by operation of law, and is the controlling instrument for the purposes of this dispute. *See id.*

### B.    *The 2009 Lease Bars Pisharodi's Claims*

Wells Fargo argues that the 2009 lease renders Pisharodi's claims untimely and that serves as an adequate, independent basis for granting summary judgment in its favor. We agree. Here, the 2009 lease expressly provides that Pisharodi has one year to commence legal action against Wells Fargo after a cause of action accrues. Under Texas law, a cause of action accrues "when facts come into existence that permit a plaintiff to recover." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017). Pisharodi first discovered that his valuables were missing on April 13, 2017. Thus, a timely suit would have been filed on April 13, 2018. But he did not sue Wells Fargo until February 2019. His only defense to Wells Fargo's timeliness argument is that the limitation stems from an agreement that was allegedly invalid and unenforceable. We have already determined the controlling effect of the 2009 lease. *See supra* Part III.A. Therefore, we hold that his claims against Wells Fargo are time-barred.

### IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's summary judgment for Wells Fargo.