# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 9, 2023

Lyle W. Cayce
Clerk

———————

No. 22-60450

———————

Tavita Farani; Tyler Bunting; Michael Locke,

*Plaintiffs—Appellees*,

*versus*

Leslie File

*Defendant*,

*versus*

Evanston Insurance Company,

*Debtor—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-227

———————————————————————

Before Higginbotham, Graves, and Douglas, *Circuit Judges*.

Per Curiam:[*]

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60450

Before the court is whether Evanston Insurance Company ("EIC") is required to pay insurance coverage under its automobile policy with Prime Time Healthcare LLC ("Prime Time"). For the reasons below, EIC must honor its insurance obligations, so we AFFIRM.

## Factual Background

On July 23, 2014, in North Dakota, a car driven by Leslie File struck a van carrying nine passengers. All of the van's occupants claimed injuries arising out of the accident, including the three Appellees in this case, Tavita Farani, Tyler Bunting, and Michael Locke.[1] File, a resident of Mississippi, was employed by Prime Time as a traveling nurse. She was on assignment in Montana and driving an automobile rented for her use by Prime Time. However, she was not on official work duties at the time of the wreck and was returning to Montana after visiting friends. Farani sued File in Mississippi federal court under diversity jurisdiction for the injuries, and the jury found File liable but did not find against Prime Time because it concluded that File was not acting within the course and scope of her employment at the time of the wreck. After a trial lasting six days, the jury found in favor of Farani and against File in the following amounts: $877,780.00 for Tavita Farani, $617,707.61 for Tyler Bunting, and $583,519.00 for Michael Locke. The total verdict was $2,079,006.61.

Travelers Casualty Insurance Company of America ("Travelers"), an automobile insurer for Prime Time, acknowledged coverage for the wreck and paid Farani up to the limits of its policy. Travelers determined that File was insured under its policy because she was the "driver, with permission,"

---

[1] Both Bunting and Locke filed Rule 28(i) letters joining Farani's briefs. For clarity, the collective Appellees are identified as Farani.

No. 22-60450

of an automobile rented by Prime Time for her use, and that its policy was in effect since before the date of the accident.

EIC refused to pay under its policy. On March 24, 2022, the district court found that the EIC policy covered File's accident and granted summary judgment in favor of Farani. EIC appealed.

## Standard of Review

The standard of review on summary judgment is *de novo*. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). The court should grant summary judgment where there is no genuine dispute of material fact "and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)). Further, interpretation of an insurance contract is a question of law subject to *de novo* review. *Travelers Lloyds Ins. Co. v. Pacific Employers Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010). This court "may affirm [summary judgment] on any grounds supported by the record." *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000).

## Discussion

The controversy here implicates Mississippi's rules for construction of insurance policies, which are as follows:

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is

No. 22-60450

subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382–83 (5th Cir. 1998) (internal citations omitted).

## I.    The EIC policy applies even though there are no insurance policies listed as the "controlling underlying insurance"

EIC's policy states that it "will follow form over Additional Insureds covered in the 'controlling underlying insurance' to the extent of their liability due to the negligence of the Named Insured." Travelers paid its limits to File. File then turned to Prime Time's umbrella liability policy with EIC, which provides an additional $2,000,000.00 in coverage.

The wreck occurred on July 23, 2014. The Travelers policy period was from July 22, 2014 to July 22, 2015. The EIC policy period was from March 27, 2014 to March 27, 2015. The dispute here is because the Travelers policy—even though purchased, paid for, and in effect from July 22, 2014—was not added by EIC to the schedule of insurers until September 22, 2014. EIC backdated the Travelers policy to July 22, 2014, a day before the accident.

No. 22-60450

EIC's two main arguments fail. First, EIC argues that "the post-accident endorsement mistakenly adding the Travelers Policy to the Schedule in the EIC Policy . . . does not render that Travelers Policy into the required 'controlling underlying insurance.'" This does not change the fact that EIC agreed to backdate the Travelers policy to before the accident, so, at the very latest, EIC's coverage began a day before the accident.

Even without the backdating, EIC still loses. EIC's second argument is that even though Travelers paid its limit, "[t]he Travelers Policy was . . . 'underlying insurance' but not 'controlling underlying insurance' as those terms are defined in the EIC Policy." According to EIC, there is a distinction between "underlying insurance" and "controlling underlying insurance" and the EIC policy only applies to bodily injury if the Travelers policy was defined as "controlling underlying insurance." This is a distinction without a difference because the definition of "controlling underlying insurance" and "underlying insurance" both include "any other insurance available to the insured." Even without the backdating, Travelers and EIC were insurance available to Prime Time on the date of the accident because Prime Time bought both the Travelers and EIC insurance before the accident occurred.

This EIC insurance policy is plain and unambiguous, and reading the policy as a whole, Travelers insurance was in effect before the accident occurred, both by the backdating or by virtue of it being an insurance available to the insured. Therefore, EIC must honor its coverage obligations.

## II.    The Nebraska judgment is not binding under res judicata

EIC filed a declaratory judgment action against Prime Time in the United States District Court for the District of Nebraska. On June 20, 2019, that court issued a stipulated judgment between EIC and Prime Time. The stipulated judgment declared that the Travelers policy was issued in July of 2014 to "fill[] the gap" in Prime Time's insurance plan and that no request

was made to EIC to add the Travelers Policy to the Schedule until after File's accident had occurred and been reported to Travelers. The court ordered that the relevant endorsement to the EIC policy be reformed to reflect the "Policy Changes Effective" date of September 22, 2014, and the stipulation provides that the EIC policy does not apply to and does not provide coverage for any auto occurrence which occurred prior to September 22, 2014, which excludes coverage for any claims related to the accident.

"As a matter of federal common law, federal courts sitting in diversity apply the preclusion law of the forum state unless it is incompatible with federal interests." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020). In Mississippi, the doctrine of res judicata requires the presence of four identities: "(1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Harrison v. Chandler–Sampson Ins., Inc.*, 891 So.2d 224, 232 (Miss. 2005). "[T]he absence of any one of the elements is fatal to the defense of res judicata." *Id.*

Res judicata fails most obviously under prong three: the identity of the parties to the cause of action. The only parties to the Nebraska proceeding were EIC and Prime Time. Neither File nor Farani were made a part of that litigation. "[S]trict identity of parties is not necessary for either res judicata or collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action." *Hogan v. Buckingham ex rel. Buckingham*, 730 So. 2d 15, 18 (Miss. 1998). "It must be remembered, however, that Mississippi follows the general rule that parties must be substantially identical for res judicata to apply." *Id.*

Here, Prime Time is not being held liable for the actions of File since the jury determined that File was not acting in the course and scope of her

employment at the time of the wreck. Because of this, Prime Time had no interest in covering File—a former employee—under its insurance policies. The interests of Prime Time and File were dissimilar because, as the district court noted, Prime Time would have had more incentive to exclude the former employee File from coverage under its policies for many reasons, such as maintaining good relations with its insurer EIC or avoiding possible premium increases. Farani notes that "if File or Plaintiffs were involved in the Nebraska proceeding, they never would have agreed to the stipulation." Therefore, Farani did not stand in privity with Prime Time in the Nebraska action, which is "fatal" to EIC's defense of res judicata. *Harrison*, 891 So.2d at 232.

### III.    The known-loss doctrine does not apply

Appellant argues that the "known-loss doctrine," which is "premised upon the simple idea that, normally, one cannot buy insurance coverage for a loss already known to be in progress, or for a loss that the insured planned, intended, or is aware is substantially certain to occur" applies in this case. *Nat'l Cas. Co. v. Franklin Cnty.*, 718 F. Supp. 2d 785, 794 (S.D. Miss. 2010) (quoting *Buckeye Ranch, Inc. v. Northfield Ins. Co.*, 134 Ohio Misc.2d 10, 23, 839 N.E.2d 94 (Ohio Com. Pleas 2005)). There is no indication that Mississippi has adopted the known-loss doctrine, but even assuming without deciding that Mississippi law recognizes the known-loss doctrine, it does not apply here.

The accident at issue occurred prior to the actual listing of Travelers on the EIC schedule of underlying insurers, but it did not occur prior to Prime Time's purchase of the Travelers policy. The doctrine only applies to defeat coverage for an occurrence that took place or was in progress prior to the purchase of the insurance *See, e.g.*, *Sosebee v. Certain Underwriters at Lloyds London*, 566 F. App'x 296, 297 (5th Cir. 2014) (unpublished) (per curiam)

("The 'known loss' aspect of the [known-loss] doctrine precludes coverage 'where the insured is, or should be, aware of . . . [a] known loss at the time the policy is purchased.'") (quoting *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex. App. 1995)); *Essex Ins. v. Redtail Prods.*, 213 F.3d 636, *1 (5th Cir. 2000) (unpublished) ("[U]nder the [known-loss] doctrine, Redtail could not receive coverage for a loss or damage which was known to have begun at the time the policy was purchased."). Even if the known-loss doctrine is applicable in Mississippi, it does not apply here because the insurance coverage existed prior to the accident.

## Conclusion

The judgement of the district court is AFFIRMED.